UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DARI GARCIA, : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 24-012WES |
| : | |
| DR. CHRISTINE TERRICO, et al., : | |
| Defendants. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On January 5, 2024, Plaintiff Dari Garcia, an inmate serving a sentence in the custody of the Rhode Island Department of Corrections ("RIDOC"), filed a *pro se* Complaint alleging that he has been subjected to deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment to the United States Constitution, denied due process and been subjected to medical malpractice. ECF No 1. Plaintiff brings his federal law claims based on 42 U.S.C. § 1983, and his state law claim of medical malpractice presumably pursuant to Rhode Island state law. Id. at 6, 13. Plaintiff has named twenty-five persons (RIDOC physicians, nurses, other medical providers and correctional officials) as Defendants, all sued in their individual and official capacities. Id. at 5-12. Plaintiff claims that Defendants' conduct has caused him to suffer post-traumatic stress disorder, depression, mental health issues, physical pain, self-hurt, and suicide attempts requiring trauma therapy. Id. at 14, 16. For remedies, Plaintiff seeks compensatory and punitive damages and an injunction so "that no inmates go through what Plaintiff has been to change the way inmates are treated." Id. at 14. Plaintiff's 206-page pleading includes handwritten pages of allegations, prison records reflecting his grievances and bookings (some annotated) and medical records reflecting the extensive medical treatment he has received.

Plaintiff originally accompanied his Complaint with an application to proceed *in forma pauperis* (IFP), ECF No. 2, and the required six-month account statement, ECF No. 3, which collectively establish that he is eligible to proceed IFP. The IFP motion was referred to me for review, which triggered the obligation to screen Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and to enter an order of dismissal if it fails to state a claim on which relief may be granted. Munir v. State of Rhode Island Superior Court, C.A. No. 22-57WES, 2022 WL 670888, at *1 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 23, 2022). Before I had issued this report and recommendation, Plaintiff paid the filing fee, based on which the IFP motion may be denied as moot. However, payment of the filing fee does not extinguish my duty to preliminarily screen Plaintiff's pleading. Barnett v. Massachusetts, Civil Action No. 13-10038-DPW, 2013 WL 210616, at *2 (D. Mass. Jan. 17, 2013) (prisoner's complaint should be dismissed "whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune to such relief").

Having performed this review and for the reasons discussed below, I find that, the Complaint fails to state a plausible claim as to most of the named Defendants and fails to state a plausible claim of a due process deprivation. To that extent, I recommend that it be dismissed. As to the claims and Defendants who survive screening and mindful that Plaintiff is eligible to proceed IFP, pursuant to Fed. R. Civ. P. 4(c)(3), I further recommend that the Court direct that the Complaint be served, either pursuant to the Agreement on Service between the U.S. District Court for the District of Rhode Island and the Rhode Island Attorney General or by the United States Marshals Service, on the remaining three Defendants (Dr. Justin Berk, Dr. Christopher

Salas and Dr. Christine Terrico) who must respond only to Plaintiff's allegations that he was deprived of his Eighth Amendment rights and was injured by medical malpractice.

I.      **Standard of Review**

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the standard used when ruling on a Fed. R. Civ. P. 12(b)(6) motion. Chase v. Chafee, No. CA 11-586ML, 2011 WL 6826504, at *2 (D.R.I. Dec. 9, 2011), adopted, 2011 WL 6826629 (D.R.I. Dec. 28, 2011). That is, "[t]o state a claim on which relief may be granted, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). In making this determination, the Court must accept a plaintiff's well-pled factual allegations as true and construe them in the light most favorable to him. Id. However, although the Court must review pleadings of a *pro se* plaintiff liberally, Instituto de Educacion Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000), the Court need not credit bald assertions or unverifiable conclusions, Chase, 2011 WL 6826504, at *2. Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint based on speculation cannot survive this scrutiny in that the factual content must be sufficient to "'nudg[e] his claims' . . . 'across the line from conceivable to plausible.'" Id. at 680 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

When the claims in the pleading are inconsistent with or contradicted by the materials the plaintiff has attached to or incorporated in the pleading, the claims in the pleading are rendered implausible. DeBarros v. Frank, C.A. Nos. 20-260WES, 20-268WES, 20-293WES, 20-297WES, 2020 WL 5570005, at *1 (D.R.I. Sept. 17, 2020), adopted, 2021 WL 165096 (D.R.I. Jan. 19, 2021), appeal dismissed, No. 21-1090, 2021 WL 3417914 (1st Cir. May 21, 2021).

Thus, when the attached medical records tell a materially different story from what is alleged in the body of the complaint, dismissal at screening may be appropriate. Botelho v. Rhode Island Dep't of Corr., C.A. No. 23-294WES, 2023 WL 4846728, at *2 (D.R.I. July 28, 2023), adopted by Text Order (D.R.I. Aug. 15, 2023).

II. **Eighth Amendment Claim of Denial of Medical Care**

   A. **Facts**

Plaintiff's pleading alleges that he suffers from three very serious health conditions that preceded his incarceration but that have required medical attention since he has been in custody. First, he was shot in the abdomen and had abdominal surgery to remove part of his large intestine; second, he shot himself in the head resulting in a serious brain injury requiring surgical intervention; and third, he has mental health issues. ECF No. 1 at 32-33, 48. The focus of Plaintiff's Eighth Amendment claim is on the medical treatment he has received for these serious conditions while in RIDOC custody. In interpreting the Complaint with appropriate leniency, the Court has performed a detailed review both of Plaintiff's allegations and of the attached medical and prison records, noting where the records appear to contradict the claims.

   1. Abdominal Treatment

Prior to and since he has been incarcerated, Plaintiff alleges that his abdominal pain[1] was treated with Bentyl, which Plaintiff found "was helping." ECF No. 1 at 48. According to a

---

[1] Regarding abdominal concerns, Plaintiff also alleges that various RIDOC medical providers found that he has had blood in his stool from time to time, beginning at least in December 2021, a week after he stopped Bentyl. ECF No. 1 at 83. The Complaint further reflects Plaintiff's dissatisfaction arising from confusion about whether this symptom was properly recorded and reported to treating physicians and about a laboratory-reported "lab accident" with one sample that RIDOC had sent to the laboratory. Id. at 83-87, 91. In one instance, Plaintiff alleges that Defendants Nurse Dave Piccirelli and Dr. Salas lied to him about whether this symptom had been promptly reported to the physicians. Id. at 85. He also claims that he had to provide another stool sample because of the laboratory error. Id. at 89. This confusion does not appear to state an actionable claim of a constitutional deprivation in that Plaintiff's medical providers consistently note a history of blood in the stool, e.g., id. at 18, 28, and the Complaint does not allege either any material delay or any injury caused by delay in the diagnosis of this symptom.

4

medical note by Defendant RIDOC Medical Director Dr. Christopher Salas, at intake Plaintiff saw a Dr. McGreen, who recommended Colace, but Bentyl (which Plaintiff preferred) was prescribed. Id. at 184. Plaintiff continued with Bentyl until it was terminated because of his admitted "passing and hoarding" it as of December 21, 2021. Id. at 48, 184. Plaintiff claims that the hoarded Bentyl was found by Defendant Lt. Gallo based on an investigation by Defendant Billy Begones. Id. at 48-49, 114. Plaintiff was tapered off Bentyl "by [unnamed] provider" after this incident. Id. at 196. For seven months after the hoarding was discovered (that is, until July 15, 2022), Plaintiff claims he was given fiber capsules but otherwise received no treatment for his abdominal condition. Id. at 49.

The incorporated medical records reflect that Plaintiff received frequent medical attention for abdominal issues during the alleged seven-month gap (December 21, 2021, until July 15, 2022). See ECF No. 1 at 189 (in early January 2022, "given milk of magnesia and advised to drink plenty of water, [and to] report" on progress; GI consult ordered); id. at 191 (on January 20, 2022, he "refused any meds [except Bentyl] to a[l]leviate symptoms, and he refused."); id. at 193-94 (in February 2022, he "saw [GI] who recommended Colace . . . he doesn't want to take [it] . . . he basically only wants [B]entyl"); id. at 198 (in March 2022, "Patient claims non compliance with Reguloid fiber powder along with stating 'I don't mess with fiber powder, I need my Bentyl'"). During a "Code White" incident on March 14, 2022, Plaintiff alleges that he was in terrible abdominal pain and begged to be taken to the hospital. ECF No. 88, 122. Defendant Dr. Salas made the medical judgment that Plaintiff did not need to be taken to the hospital. Id. at 88. A medical record reflects that hospitalization was "not medically necessary at [that] time" but Senna was given; according to this note, "Patient appears in no distress throughout this encounter." Id. at 196. After the incident, Plaintiff was disciplined for failing to

5

"lock-in." Id. at 88.  According to the booking that followed, as observed by Defendant Lt. Macomber, Plaintiff was upset because he could not have Bentyl, but once he understood he could not manipulate medical staff, he was observed no longer to be in pain.  Id. at 122.  Plaintiff alleges that Lt. Macomber lied about these observations during the disciplinary hearing.  Id.

On April 13, 2022, Defendant Dr. Salas referred Plaintiff for another "GI Consult" based on his abdominal complaints and requested medical recommendations to address Plaintiff's concerns:

> I gave him benytl (sic) after this which he passed to another inmate; I had to stop it and he won't be allowed to have this going forward; didn't like colace . . . ; please consider another medication or regimen for chronic constipation. . . .

ECF No. 1 at 184.  On the same day, Plaintiff was seen in the "GI Clinic"; the treating note reflects a recommendation of Linzess and monitoring of stool.  Id. at 185.

Per the Complaint, the seven-month gap ended in July 2022, when Defendant Dr. Christine Terrico, alleged to be one of the Medical Directors, saw Plaintiff for abdominal pain. She told Plaintiff that the "Medical Director" does not want him on Bentyl because of his hoarding and many contraband bookings.[2]  ECF No. 1 at 50-51.  Based on described pain, she put him on the list to see the "G.I. again."  ECF No. 1 at 51.  Instead of Bentyl, on July 15, 2022, Plaintiff was prescribed hyoscyamine, which is supposed to be like Bentyl, but Plaintiff claims is not as effective.  Id. at 49.

On January 19, 2023, Plaintiff alleges that he was seen by two "G.I. doctors."  ECF No. 1 at 18-19, 160.  He told them he was taking hyoscyamine, but it was not working as well as Bentyl; one of the two doctors (a male) told Plaintiff that he would recommend Bentyl, Wellbutrin and Gabapentin and to stop hyoscyamine and that "what is being done to you is

---

[2] Plaintiff concedes that he has many "contraband" bookings but alleges that not all are for hoarding prescribed medication.  E.g., ECF No. 1 at 51, 110 (contraband booking for hoarding bleach).

6

medical malpractice." Id. at 160-61. The pertinent medical record reflects that this encounter focused on urinary issues (not in issue) and was with "Dr. Iannotti." Id. at 18-19, 157. According to the record, Dr. Iannotti questioned but did not recommend or prescribe Bentyl, Wellbutrin or Gabapentin, as follows: "? stop hyoscyamine   ? restart Wellbutrin or Gabapentin or Bentyl." Id. at 157. After this encounter, Plaintiff continued to be prescribed hyoscyamine. Id. at 161. A later record from August 10, 2023, signed by Dr. Iannotti (also focused on urinary concerns) notes Plaintiff's history of blood in the stool and that he was still taking hyoscyamine. Id. at 28. At this encounter, Dr. Iannotti recorded Plaintiff's report of "multiple GI complaints, multiple c/o regarding psych meds," and questioned "? Re-evaluate psych meds, ? follow up GI consult," but made no reference to prescribing or switching to Bentyl, Wellbutrin or Gabapentin. Id. at 30.

  The Complaint contains records and allegations reflecting Plaintiff's repeated requests that he be put back on Bentyl. E.g., ECF No. 1 at 150, 166-68, 194, 198. It also contains medical and prison records reflecting RIDOC correctional officials' attention to his requests for medical treatment. E.g., id. at 162, 203 (Defendant Warden Corry assures Plaintiff in writing that she spoke to "medical to research options to treat your medical condition(s)" and "regarding specifically pain management," that he is not being ignored, but that "[t]he facility does not dictate to medical"); id. at 151-52 (Defendant Deputy Warden Bray confirms receipt of Plaintiff's letter and forwards to medical for response because of HIPAA). And it reflects RIDOC's concern that Plaintiff had engaged in aggressive behavior (making loud demands for Bentyl in Kent Hospital emergency room), manipulative behavior (claiming severe abdominal pain and demanding to go to the hospital when observers noted no significant distress) and self-

harm (swallowing of two batteries to persuade officials to prescribe Bentyl). Id. at 53, 122, 140, 145, 196.

Plaintiff alleges that Bentyl was helping and, since it has been withheld, he has constant pain and has lost twenty-five pounds. ECF No. 1 at 48, 165. Although Plaintiff's complaints of abdominal pain and blood in the stool are consistently referenced, none of the medical records mention weight loss. The only post-Bentyl medical records on which weight is recorded (in early January and mid-March 2022) reflect that it was then stable. Id. at 194, 197. In August 2022, Plaintiff was caught hoarding "yet again," this time hyoscyamine. Id. at 52. However, he has not been taken off hyoscyamine, which has left him confused and skeptical. Id.

### 2. Headache Treatment

Since he was shot in the head and had brain surgery (including the implantation of a plate), Plaintiff has suffered from intensely painful headaches. ECF No. 1 at 49-50. For a time, while in custody at RIDOC, he was prescribed Gabapentin for the pain caused by this traumatic brain injury, which he alleges was effective in preventing headaches. Id. at 45-46. However, he hoarded Gabapentin (as he concedes – "I would at times hoard 3 of my 'Gabapentin Pills'"; he knew that was "'not' the right thing to do ethic[a]lly") and was caught in July 2022. Id. at 22, 50. Defendant Dr. Christine Terrico told Plaintiff that he had five bookings for contraband (which he claims is not accurate).[3] Id. at 50-51. As a result, Plaintiff was weaned off Gabapentin and was completely off by August 1, 2022. Id. at 50. In September 2022, Nurse Practitioner[4] Carolyn Taborelli-Baxter offered Tylenol as an alternative, which he refused. Id. at

---

[3] See n.2 supra.

[4] Plaintiff apparently is unaware that a nurse practitioner is a healthcare professional who is licensed to prescribe medication and provide medical treatment, including physical assessment, diagnosis, and management of health care and illnesses. See 216 R.I. Code R. § 40-10-11.3(A)(4) (nurse practitioners are members of the health care delivery system whose medical practice includes prescriptive privileges). Because of his misunderstanding of what a nurse

8

54-55. The medical record also reflects he has been prescribed Topamax and sumatriptan, both medications to address headache pain. Id. at 18, 25, 28. In December 2022, Plaintiff saw a neurologist; a record reflecting this encounter for headache treatment reflects: "Rec. restarting gabapentin if possible. If not possible, would consider trial of Topamax." Id. at 156, 159. In January 2023, Plaintiff saw the nurse practitioner about getting a prescription for Topamax, but refused to allow her to examine him,[5] which she interpreted as a refusal to take the medication. Id. at 159-60. At some point, Topamax was started but Plaintiff did not like it. Id. at 160. In May 2023, Defendant Deputy Warden Bray wrote a letter advising Plaintiff that he has been referred to a neurologist again to address his headache complaints. Id. at 163.

### 3. Mental Health Treatment

Plaintiff claims that he had anxiety, depression and attention deficit hyperactivity disorder, for which he was prescribed Wellbutrin prior to being incarcerated. ECF No. 1 at 52. When he was first in RIDOC custody, a psychiatrist named Dr. Lee (not named as a defendant) told Plaintiff that she would not prescribe Wellbutrin for him because of side effects. Id. at 52. Instead, she prescribed Elavil. Id. When Plaintiff complained, Dr. Lee offered to prescribe other medication for mental health symptoms, but Plaintiff refused because he wanted Wellbutrin, which Dr. Lee refused to prescribe. Id. at 52-53. On May 2022, Plaintiff was seen by another RIDOC psychiatrist, Defendant Dr. Christopher Matkovic, who agreed with Dr. Lee's opinion about Wellbutrin's side effects. Id. at 53. Dr. Matkovic also told Plaintiff that Wellbutrin is abused in the prison setting, although Plaintiff alleges that Wellbutrin has been prescribed for

---

practitioner is medically qualified to do, his pleading is sharply critical of Defendant Nurse Practitioner Taborelli-Baxter. E.g., ECF No. 1 at 54-55. These allegations do not state an actionable claim.

[5] According to Plaintiff, this refusal was due to his belief that a nurse practitioner cannot provide medical services. ECF No. 1 at 160.

another inmate.  Id. at 53-54.  Plaintiff was seen by Dr. Matkovic again in September and again in October 2022.  Id. at 158.  In addition to Elavil, medical records reflect that Plaintiff has also been prescribed paroxetine for depression.  Id. at 28.  In July 2023, a medical record reflects an encounter with a physician, who prescribed a trial of venlafaxine (an antidepressant) and offered other drugs if that was not efficacious.  Id. at 26.

B.    **Law Regarding Eighth Amendment**

As a state-adjudicated prisoner, Plaintiff's right to constitutionally adequate health care arises pursuant to the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To sustain such a claim, Plaintiff must satisfy a two-prong test.  Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (per curiam).

For Prong One, the claimant must show, "as an objective matter, that he has a serious medical need[ ] that received inadequate care."  Id. (internal quotation marks omitted).  A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); see Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (per curiam) (defining serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").  Adequate medical care is treatment by qualified medical personnel who provide services that are based on medical considerations and are of a quality acceptable within the prudent professional standards in the community, tailored to an inmate's particular medical needs.  United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987); Barrett, 292 F. Supp. 2d at 285.  This is not the "most sophisticated care" available; nor is it ideal care or care of the prisoner's choosing.  Kosilek v. Spencer, 774 F.3d 63, 82, 85 (1st Cir. 2014) (internal quotation marks omitted); see Kidd v.

Mattis, No. 22-cv-562-SM-AJ, 2023 WL 6447236, at *3 (D.N.H. Sept. 12, 2023) (§ 1983 claims based on refusal to prescribe Vicodin and Valium, which prisoner believed most effective, dismissed at screening because prisoner was receiving other medication for same purposes; only claim based on refusal to provide prescribed pain medication survives screening), approved, 2023 WL 6443926 (D.N.H. Oct. 3, 2023). The emphasis is on seriousness – the Constitution proscribes treatment that shocks the conscience. Kosilek, 774 F.3d at 83. Inadvertence or negligence is not enough. Leavitt v. Corr. Medical Servs., Inc., 645 F.3d 484, 497-98 (1st Cir. 2011).

Prong Two is subjective. Abernathy, 984 F.3d at 6; Silva v. Clarke, C.A. No. 19-568JJM, 2022 WL 1091336, at *9 (D.R.I. Apr. 12, 2022), adopted by Text Order (D.R.I. May 2, 2022). It mandates that the claimant must demonstrate, as to each named defendant, that he/she was aware of the serious need for treatment and still failed to provide treatment. Barrett, 292 F. Supp. 2d at 285. "Deliberate indifference" requires a showing of "greater culpability than negligence but less than a purpose to do harm." Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011). "To show such a state of mind, the plaintiff must provide evidence that the defendant had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (citation and internal quotation marks omitted). If a prisoner has received some medical attention and the dispute is over its adequacy, "federal courts are generally reluctant to second guess medical judgments." Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (internal quotation marks omitted). For a defendant who has not provided direct medical treatment, the Prong Two inquiry must examine whether he/she directed or otherwise had knowledge of allegedly inadequate care provided by others. See Guadalupe-Báez v. Pesquera, 819 F.3d 509,

515 (1st Cir. 2016).  That is, liability must be premised on the named defendant's own acts or omissions despite actual or constructive knowledge of the grave risk of harm, evincing reckless or callous indifference to the prisoner's constitutional rights.  Id.; see Daggett v. York Cnty, No. 2:18-cv-00303-JAW, 2021 WL 868713, at *40 (D. Me. Mar. 8, 2021).  There must be a solid causal link between the particular defendant's conduct and the violation.  Guadalupe-Báez, 819 F.3d at 515; Silva, 2022 WL 1091336, at *13.

It is settled law that deliberate indifference is not established by the allegation that a provider has stopped a specific medication because the prisoner is not taking it as prescribed, but instead is hoarding or passing it, as long as adequate alternative treatment is offered.  See Jones v. Tompkins, 715 F. App'x 101, 103 (2d Cir. 2018) (no Eighth Amendment violation where narcotic discontinued due to attempted hoarding and non-narcotic offered to address pain; prisoner's preference for narcotic is not evidence of deliberate indifference); Hull v. Galipeau, No. 3:20-CV-713-JD-MGG, 2021 WL 981121, at *2 (N.D. Ind. Mar. 16, 2021) (hoarding medication can be a legitimate reason to discontinue medication if otherwise a medically appropriate exercise of professional judgment); Johnson v. Fields, No. 2:14-cv-38-FDW, 2017 WL 5505991, at *9 (W.D.N.C. Nov. 16, 2017) (discontinuation of medication due to an inmate's prohibited "hoarding" cannot sustain a deliberate indifference claim).  It is also settled that prison officials may consider institutional security when responding to the medical needs of prisoners; thus, it is not unconstitutional to consider that a drug like Gabapentin or Wellbutrin is at high risk of diversion in prisons in deciding whether to prescribe it.  Hickey v. Tompkins, Civil No. 19-11349-LTS, 2021 WL 858439, at *7 (D. Mass. Mar. 8, 2021); see Atakpu v. Lawson, No. 1:05–CV-00524, 2008 WL 5233467, at *11 (S.D. Ohio Dec. 11, 2008) ("In a prison setting, the decision to discontinue a pain medication because of concerns of abuse of such medication does

not amount to deliberate indifference to serious medical needs."). Nor is it deliberatively indifferent for medical providers to consider manipulative behaviors in considering what medical treatment is appropriate. Stone v. Evangelidis, 507 F. Supp. 3d 366, 374 (D. Mass. 2020) (no deliberate indifference for medical professional to consider manipulative and drug-seeking behavior, including threat of self-harm (hunger strike) to protest physician's refusal to prescribe desired medication; such judgment "'made by a professional . . . is presumptively valid [and] liability may be imposed only when [it] is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment'") (quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982)).

### C.  Analysis of Eighth Amendment Claim

The gravamen of Plaintiff's Eighth Amendment claim is that he has received significant medical attention for his serious medical needs, but that his medications of choice (Bentyl, Gabapentin and Wellbutrin) have either not been prescribed by treating physicians due to side effects and the risk of institutional abuse (Wellbutrin) or have been discontinued due to his admitted "hoarding" and "passing" (Bentyl and Gabapentin). For mental health, Plaintiff alleges (and the medical records confirm) that he has consistently been offered medications and treatment other than Wellbutrin. For abdominal and headache pain, Plaintiff alleges that he was weaned off Bentyl and Gabapentin after the hoarding was discovered and other treatments/medication were offered and/or provided but these were not effective. These factual allegations as pled are seriously flawed: (1) by the sheer amount of medical attention Plaintiff has received; and (2) because a medical judgment not to prescribe medication based on side effects or based on the prisoner's failing to take it as prescribed, instead hoarding and passing it

to others resulting in a serious risk to institutional safety, does not transgress the Constitution as long as alternative treatment is offered, as the Complaint reflects occurred here. Nevertheless, considering Plaintiff's *pro se* status, I am mindful that, at this phase, the Court must accept as true Plaintiff's allegations that Dr. Iannotti opined that the alternative treatments in regard to Bentyl, Gabapentin and Wellbutrin was "medical malpractice" and that the alternative treatments were not adequate in that they resulted in significant pain and weight loss. Therefore, I find that these allegations are sufficient – at least for the limited purpose of §§ 1915(e)(2) and 1915A screening – to meet the first Eighth Amendment Prong.

Plaintiff's Eighth Amendment claim falters, however, at the second Prong. The Complaint is utterly lacking in factual allegations sufficient to make plausible that most of the named Defendants were deliberately indifferent to Plaintiff's objectively serious need for treatment. For starters, the Complaint contains no allegations regarding the following Defendants: former RIDOC Director Patricia Coyne-Fague, Assistant Director Rui Diniz, Lt. McCartney, Social Worker Nicholas Ferro, Assistant Medical Director Pauline Macussen, Head Nurse Venny Jackavoney and Lt. Braddock. I recommend that all claims against these Defendants be dismissed. For the remaining correctional Defendants, the Complaint mentions them but does not allege any actionable conduct in violation of the Eighth Amendment. These are: Defendant Lt. Gallo (alleged only to have discovered that Plaintiff was hoarding Bentyl, ECF No. 1 at 48); Correctional Officer Santagato (alleged only to have exchanged angry words with Plaintiff regarding Plaintiff's demand that he give papers to Plaintiff's attorney, id. at 134); Officer Lucca (alleged only to have been the discipline hearing officer who allowed Lt. Macomber to testify, id. at 128, 136); Correctional Officer Daniels (alleged only to have "trashed" Plaintiff's cell during a search, id. at 137); Lt. Macomber (alleged only to have

mentioned Plaintiff's need for Topamax to physician, to have been present during the "Code White" incident and to testifying falsely regarding his observation that Plaintiff did not appear to be in pain and refused to return to his cell after Dr. Salas advised that Plaintiff should not be taken to hospital, id. at 88, 122, 129); Deputy Warden Michael Fennessey (alleged only to have failed properly to review Plaintiff's disciplinary booking for refusing to "lock-in," which charge Plaintiff denies, id. at 130); Warden Lynn Corry (alleged only to have spoken to Plaintiff about his medical concerns and to have talked to medical staff on his behalf, id. at 162, 166, 203); Deputy Warden Bray (alleged only to have spoken to medical staff on Plaintiff's behalf, id. at 151-52); Investigator Billy Bagnones (alleged only to have investigated Plaintiff's "passing and hoarding" of Bentyl, id. at 48). I recommend that all claims against these Defendants be dismissed.

For some of the health care professionals named, the Complaint mentions them, but contains no allegation that these individuals engaged in actionable conduct in violation of the Eighth Amendment. These are: Social Worker Megan Russo (alleged only to have been present when Plaintiff was meeting with Dr. Matkovic, ECF No. 1 at 53-54); Nurse David Piccirillo (alleged only to have been involved in the February 2022 confusion about reporting the observation of blood in the stool, id. at 84-86); Nurse Brady (alleged only to have asked Plaintiff to describe his pain during the "Code White" incident, to have provided a stool softener that helped and to have contacted Dr. Salas, id. at 88); and Darcia Montenegro, R.N. (alleged only to have taken a stool sample, told Plaintiff that the laboratory had an accident with a sample and been present when another provider addressed Plaintiff's request for Gabapentin, id. at 86, 159). I recommend that all claims against these Defendants be dismissed.

That leaves five medical Defendants – Medical Directors Dr. Justin Berk, Dr. Christine Terrico and Dr. Christopher Salas; Nurse Practitioner Taborelli-Baxter; and Psychiatrist Dr. Christopher Matkovic.

Of these, Dr. Matkovic is alleged to be the psychiatrist who declined to prescribe Wellbutrin because of side effects (consistent with the medical judgment of psychiatrist Dr. Lee), as well as because of the institutional risk of abuse, and to have offered Plaintiff alternative medication, which Plaintiff refused (and walked out). ECF No. 1 at 53-54. These factual allegations do not give rise to an inference of deliberate indifference to a serious medical need, which is essential to plead an Eighth Amendment violation plausibly. Similarly, Nurse Practitioner Taborelli-Baxter is accused of telling Plaintiff that she must follow the medical instruction of the "Medical Director" in declining to prescribe Bentyl and Gabapentin, of trying to provide medical support for Plaintiff's abdominal distress and headaches, and of assisting him with setting up appointments with the "G.I." and neurologist. Id. at 54-55, 159-60. These factual allegations also do not give rise to an inference of deliberate indifference to a serious medical need and therefore do not plausibly state a claim based on an Eighth Amendment violation. I recommend that all claims against both Dr. Matkovic and Nurse Practitioner Taborelli-Baxter be dismissed.

At bottom, I find that Plaintiff's Complaint fails to state a plausible claim that he has been deprived of constitutionally adequate medical care due to the deliberate indifference of any Defendant other than Dr. Justin Berk, Dr. Christine Terrico and Dr. Christopher Salas. I recommend that all Eighth Amendment claims against all other Defendants be dismissed.

### III.   Due Process

Beyond the vague reference to "due process" as a basis for his Complaint, Plaintiff provides nothing to support his claim of a constitutional due process deprivation. The Court can speculate that the due process claim is based on allegations about disciplinary bookings that are incorporated in the pleading. For example, Plaintiff alleges that on March 28, 2022, he received a "false booking" for failing to return to his cell due to a false statement by Defendants Correctional Officer Allard and Lt. Macomber at the disciplinary hearing. ECF No. 1 at 131. He complains of a May 2022 booking for swallowing two batteries in front of the duty nurse, arguing that discipline is an inappropriate response to conduct intended to bring attention to his denial of Bentyl to treat his abdominal issues. Id. at 140, 143. He complains of a May 2022 booking based on his conduct at Kent Hospital emergency room loudly demanding Bentyl (resulting in the summoning of a K-9 officer to subdue him); Plaintiff claims "the whole story was a lie." Id. at 145-146. However, there is no allegation that any of the relevant bookings that resulted in disciplinary confinement involved more than thirty days; most were less, some considerably less. Id. at 92-97, 99-105.

These allegations fail to state a viable due process claim. Due process procedural protections apply only if a life, liberty or property interest is abrogated; a prisoner does not have a free-standing liberty interest in not having a false disciplinary charge leveled against him. Tucker v. Wall, No. CA 07-406 ML, 2010 WL 322155, at *9 (D.R.I. Jan. 27, 2010). Without more, the Court is bound by Sandin v. Conner, 515 U.S. 472 (1995), in which the United States Supreme Court held that thirty days or less of disciplinary confinement as a consequence of a procedurally flawed disciplinary hearing does not involve an "atypical, significant deprivation" and therefore does not implicate a deprivation of a constitutionally protected liberty interest. Id.

at 484-86; see Perry v. Spencer, No. 16-2444, 2024 WL 702348, at *13 (1st Cir. Feb. 21, 2024). Therefore, I recommend that Plaintiff's due process claim be dismissed.

IV.     **Medical Malpractice**

If the Court liberally interprets the pleading in Plaintiff's favor (as it must at screening), he appears to allege that the Defendant physicians (Defendants Dr. Berk, Dr. Terrico, Dr. Salas and Dr. Matkovic) who failed/refused to prescribe his preferred medications – Bentyl, Wellbutrin and Gabapentin – committed medical malpractice. This state law claims rests on Plaintiff's assertion that, on January 19, 2023, that he was seen by one of two "G.I. Doctors" (Dr. Iannotti) who told Plaintiff that he would recommend that Plaintiff be prescribed Bentyl, Wellbutrin and Gabapentin and stop hyoscyamine and that, "what is being done to you is medical malpractice." ECF No. 1 at 160-61. After this encounter, Plaintiff continued to be prescribed hyoscyamine and was not prescribed Wellbutrin, Gabapentin or Bentyl. Id. at 161. A subsequent medical record (for August 10, 2023) signed by Dr. Iannotti is focused on Plaintiff's urinary tract concerns (which are not in issue in the Complaint); regarding abdominal issues, this record notes that Plaintiff has had blood in the stool and was still taking hyoscyamine. Id. at 28-29.

Mindful that the Court's task at this phase is simply to screen with leniency based on Plaintiff's *pro se* status, I find that these facts are sufficient[6] for a state law medical malpractice claim arising from the allegation that one or more of Dr. Berk, Dr. Terrico, and/or Dr. Salas breached a standard of care in refusing to prescribe Bentyl and/or Gabapentin and/or Wellbutrin resulting in injury. See Foley v. St. Joseph Health Servs. of Rhode Island, 899 A.2d 1271, 1277 (R.I. 2006) (state law elements of medical malpractice). Considering that Plaintiff alleges that the physician who opined regarding malpractice is a "G.I. Doctor[]," ECF No. 1 at 160, I do not

---

[6] This recommendation does not foreclose the right of these Defendants to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or otherwise.

find the claim that Dr. Matkovic's psychiatric medical judgment that he would not prescribe Wellbutrin due to side effects (in which medical opinion psychiatrist Dr. Lee concurred) plausibly alleges that Dr. Matkovic deviated from a psychiatric standard of care and committed medical malpractice. Therefore, I recommend that any malpractice claim against Dr. Matkovic be dismissed for failing to state a claim.

## V.     Conclusion

Based on the foregoing, pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), I recommend that Plaintiff's Eighth Amendment and medical malpractice claims be dismissed for failure to state a claim as to all Defendants except Dr. Berk, Dr. Terrico and Dr. Salas and that Plaintiff's due process claim be entirely dismissed. I further recommend that, before ordering dismissal, the Court allow Plaintiff to file an amended complaint within thirty days of the issuance of this report and recommendation to supplement his factual allegations as to the claims and Defendants that are now deficient; if he chooses to do so, the amended pleading will be subject to further screening. As to the allegations and Defendants that survive screening (either in this Complaint or in an amended pleading), I further recommend that Plaintiff's IFP motion be denied as moot because he has paid the filing fee, but that, pursuant to Fed. R. Civ. P. 4(c)(3), the Court direct that, if Plaintiff submits completed summonses, the Complaint shall be served either pursuant to the Court's Agreement with the Office of the Attorney General or by the United States Marshals Service on Dr. Justin Berk, Dr. Christopher Salas and Dr. Christine Terrico, who must respond only to Plaintiff's allegations that he was deprived of his Eighth Amendment rights and was injured by medical malpractice.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and

recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 20, 2024